23-5394 USA v. John Stanton. Oral argument 15 minutes per side. Mr. Chapman for the appellant. Thank you and good morning. Ronald Chapman on behalf of the appellant. I'd like to reserve three minutes for my rebuttal time. Dr. Stanton is a board certified physician and was convicted of conspiracy to distribute without expert testimony establishing the authorization requirement and by a jury that clearly did not understand the jury instructions that it was provided. The combined impact of these errors permitted the jury to do exactly what the Supreme Court was concerned about in Rwanda v. United States and that is convict a physician for a civil or regulatory violation or a violation of the standard of care. The Supreme Court has repeatedly identified 21 U.S.C. 841 and therefore 846 as being ambiguous. A strong mens rea component and therefore a strong requirement to prove what is the legitimate medical purpose of a prescription or what is prescribing in the usual course of professional practice is vital to ensuring that a physician is not convicted for mere red flags. Councilor, can I cut to what I just think is the thing I'm struggling with in your side which is that this isn't like Rwanda in this sense. This is a conspiracy case where the co-conspirators pled guilty and so we know we don't have to worry about a big part of this case. There were some things that should not have happened and you can't say this wasn't a pill mill, right? That's kind of off the table. So the question is did he join the agreement and that's where it seems to me to get hard and that's where some of the Rwan issues just don't seem as salient. So that's I'm just being straight up with you that that's what's giving me pause about your argument that we you just can't deny there was a conspiracy here. They pled guilty to it. Perhaps that isn't fair to Dr. Stanton but that's how it played out and now the question is did he join it and was there enough evidence to show he knew what was going on? So that's that seems to me slightly harder than Rwan. I think I can answer that question. First substantive evidence of a guilty plea that shouldn't be used against a defendant to prove that they committed the crime. We had the testimony of Massarone who did get on the witness stand and testify and he provided a wealth of information about his own practice but conspiracy requires an agreement and if there is not direct evidence of that agreement we would want to look to course conduct. How do we determine whether a physician's course of conduct establishes some sort of knowledge? We didn't have communication to that effect so we would need to look at the actual prescriptions. Now the testimony in this case is very clear. Dr. Stanton did not prescribe until Massarone started to become injured and required a leave. Then he took over prescribing for a period that he thought was going to be several weeks but ultimately turned out to be four months and he continued prescribing to some of those patients. So the question as to whether or not there is a course of conduct establishing a conspiracy whether or not the defendant acted in concert with Massarone would require someone to look into the legitimacy of the actual prescriptions at issue. Analyzing the patient charts in order to determine whether or not those prescriptions as continued by Dr. Stanton were issued for a legitimate medical purpose in the usual course of professional practice and that's why Ruan is vital to this case because Ruan stands for the proposition that the physician himself must actually know subjectively that the prescription is unauthorized. How could we say that this defendant knew subjectively? Well we'd have to look at the records to see what was documented by Massarone to see what injuries were documented. Now testimony overwhelmingly showed that there were MRI images in the file that occasionally when patients had an inconsistent urine drug screen they were removed from the practice. Dr. Stanton prescribed lower doses of medication in some instances than Massarone. He did repeat some prescribing decisions but we would need expert testimony to establish that based on the information available to Stanton as he was reviewing those files after taking over for patients that he was also involved in prescribing illegitimate controlled substances. To hold otherwise would require a conviction for anybody who was involved in a practice that you would consider a pill mill and that's not how. I hate to interrupt but I couldn't tell when you were eventually going to stop. Your client was the medical director. Is it your argument that presumably he had the responsibility to supervise the medical activities in the clinic there and is your argument that your client didn't know how the clinic was functioning medically and the volume of opiate prescriptions and other bad practices that were going on there and people were coming in paying cash which in ways that was unorthodox or stacking up in the parking lot late at night waiting for access to the clinic to get these prescriptions? Is your argument that as a medical director your client didn't know that all these things were going on? As a medical director his responsibility was to ensure that the practice followed the Tennessee pain guidelines and there were some admitted shortfalls by the defendant with respect to his medical director duties. That's where we the Tennessee standards for how to operate a pain management clinic are not criminal in nature and permitting a conviction for conspiracy because of an agreement to violate regulatory standards is expressly prohibited by the decision in Rouen. Now I hate to interrupt but I was asking you a simple question is whether the your client was aware of the medical practices that were going on within his own clinic of which he was the medical director? And there was some knowledge about the practices that were going on to what extent that was not clearly proven by the government in this case. For instance there were a few patients that testified that the parking lot may have been busy or they saw a certain conduct but when you actually look to the record you can't establish that Dr. Stanton knew that that was going on or had observed that or even that that occurred during a time period in which Dr. Stanton was was actually there. Recall he was the medical director for a period of time but also he took a substantial break from the practice and he was not involved in the practice from its inception. In order to meet their burden the government must have shown that Dr. Stanton knew of those practices but that doesn't go far enough. Just to make just your why isn't why don't red flags go enough far enough? I guess I mean at some point you just have to throw up your hands. I mean someone driving five hours to get a prescription for back pain I mean that's absurd. The last thing you do with back pain is drive and you certainly don't drive five hours right so something's not adding up. And you know at some point if some point if we all agree there was a conspiracy you have to agree you've joined it. And if there was a particular patient that drove five hours and an expert witness analyzed the prescriptions issued to that patient and determined that they were issued in an illegitimate way then there may be some sort of argument there. But merely stacking red flags is insufficient. We cited to the Bender case a district court decision understanding its district court but the analysis there about red flags is very important. Merely stacking red flag upon red flag is insufficient to establish criminal liability. In fact the supreme court in Ruan indicated almost this exact same thing when they said really the gray zone of permissible conduct in this instance is really established by whether or not there was a or whether or not the physician departed from it. The first burden that the government had to meet was establishing what is authorized and what is not authorized. Red flags have never been shown to be a standard that is articulated in the practice of medicine for determining whether or not a prescription is legitimate. And that's important there's no empirical studies regarding red flags. There are certainly ways to explain red flags perhaps driving five hours may be made by the assumption that the patient's address on file matches where they actually live which may not be the case. Often those red flags are established merely by looking at prescription data as opposed to the specific patients. Now we have a shortfall of patients who testified in this I believe two of them were patient recruiters but in one patient that was specifically discussed Wooten we learned that Gent a recruiter took Wooten to the practice. Dr. Stanton indicated that he didn't believe a prescription was appropriate and more documentation was necessary. That patient obtained an MRI report showing significant pain and then was prescribed medication at the practice. We must have... Council I think all of your argument thus far is going to the issue of the sufficiency of the evidence. Do you intend to address any of these other issues such as the expert testimony in rebuttal or any any of these other issues? Yeah yes in the remaining minute I'll discuss the expert testimony on rebuttal first. This is a very important issue for the court. Dr. King was noticed during trial. The amount of transcripts that would have to be reviewed in order to understand how Dr. King testifies as an expert number in the thousands and thousands of pages something that would be impossible for defense council to do after the late notice of the expert. Dr. King's testimony comes into play first and foremost to show that the government did not establish what legitimate medical practice is but also to show that Dr. King stepped outside of the parameters that the court permitted and provided expert testimony and hypotheticals that the jury was able to use. Why on rebuttal isn't the door open by Stanton talking about standards? Even in briefing the government couldn't specifically articulate what Dr. Stanton put on in his case that was new. We have the Benedict case. Rebuttal testimony was permissible because the expert presented new evidence and previously undisclosed theories. That has not been shown here and that was a 2019 case and with that I'll address the rest in rebuttal. Thank you. Okay thank you very much. We'll hear from the government. Good morning. Good morning your honors. May it please the court. Alayah Lloyd on behalf of the United States. Turning to this efficiency argument your honors there was overwhelming evidence that Dr. Stanton agreed to participate in this conspiracy. As your honors pointed out Dr. Stanton served as the medical director for this clinic for over a period of four years and during that time he noticed numerous red flags that showed that the clinic was operating outside of bounds. Although so I mean just just to just to at this outset just to make sure we're looking at this through the right prism. I mean you have Macarone pleading guilty and some others. He's clearly testifying that this is a pill mill in the sense of violating federal law. Why don't plead guilty? But he doesn't say that he had a conversation with Dr. Stanton. I mean he I mean I mean that is missing in the case right and am I right that you're this is really all just circumstantial evidence because Stanton doesn't go ahead. Yes your honor it is circumstantial evidence but Dr. Macarone did testify that he did agree with Stanton to issue these prescriptions outside of the usual course of medical practice into patients who would be diverting those those into Kentucky. So we do have an admission from Dr. Macarone that that was is what was occurring but also circumstantial evidence this court is routinely held is by and far enough to show that there was an agreement to conspire and we have that here with all of the actions that Dr. Stanton took and did not take over the course of four years while operating as the medical director of GMA but also in joining Macarone and his prescribing regime. As he testified he decided to keep the patients on the same regime as Macarone to keep it simple. He didn't want to do any he didn't want to change anything up he wanted to make sure that everything was running the exact same way Macarone had put it into play. Mr. Chapman seems to emphasize the lack of expert testimony by the government uh to prosecute the case. Was was there any expert testimony presented in the government's case in chief? Yes your honor there was multiple issues uh there are multiple expert evidence presented. First you have the testimony by pharmacist Jill Lee who was noticed as an expert and admitted as an expert who talked about the usual prescribing practices that happen for controlled substances and pain management and went on to identify what would be signs of illegitimate prescribing and what would be signs of legitimate prescribing. You also have the testimony of the DEA investigator detective Sizemore who was noticed as an expert who also went on to discuss throughout different investigations into controlled substances cases what would be legitimate and illegitimate practices by a pain management clinic and that's on top of the evidence that we also introduced of just objective standards of generally accepted medical guidelines for how pain management clinics should operate and how controlled substances should go into into play. So there is a wealth of expert evidence and objective criteria from which the jury could refer and listen to and then compare it to the practices by Macarone and the defendant and come to the obvious conclusion that this pill mill was operating out of bounds that Stanton knew about it and that he facilitated and agreed to make sure that GMA operated in this precise manner. Some of that evidence also Dr. King did not testify in the case and she that was denied but we did notice to the defendant that we would use him as a rebuttal expert more than I believe two or three days before he actually testified as a rebuttal expert and under rule 16 then and now there was no requirement under that rule for the government to disclose that they were going to use Dr. King as an expert so any unfair surprise I thought I thought I thought under the new under the amendment to the rule the government couldn't have done what it did. No that's not the case your honor under the amended rule 16 the government must notice a rebuttal expert if the defendant if that rebuttal expert is going to reply to issues raised by a defendant's expert but here no defendant expert ever testified although they did certainly have one and thus there was no requirement under the rule to notify our own rebuttal expert. But given all the facts and evidence your honor there was overwhelming evidence that this was an agreement and although Bender which is a district court case that has never been approved of by this court at the circuit level is easily distinguishable as Bender said itself that expert testimony is not when there are plainly improper practices that a major can recognize as legitimate is illegitimate and that's exactly what happened in this case this court has routinely held in Chaney and Elliot that evidence of patients admitting to abuse and diversion which happened here short and cursory exams by doctors which happened here and doctors disregarding signs of drug abuse which also happened here are plainly are evidence of plainly in prescribing practices that allow a that there was improper prescribing practices and given Dr. Stanton's and Dr. Masseron's testimony that he was aware of several of these red flags that he knew the prescriptions that were being prescribed by GMA were way too addictive and he didn't want to prescribe them in his own clinic and that he also testified that he knew that certain standards existed but that those same standards at the same time are not being followed according to Dr. Masseron as well as just the other witnesses that's more than what Mr. Chapman makes the point that you can't have criminal liability even in a conspiracy just because you're violating state regulations and I will say that instinctively seems right to me that you can't make a regulatory crime or write a civil violation of criminal violation I guess is the way to put it do you respond to that point well that argument we believe was waived by the defendant because they did not the defendant did not raise that argument to an insufficiency challenge below but even if we did even if this court did consider the merits of that argument it is not the case that's not what happened here the jury instructions specifically indicated to the jury that they were not to find a per se violation of a regulatory infraction it shouldn't be equated to criminal liability in case instead as the government pointed out in the Scarito case from the fourth circuit what the jury instructions and the regulations served in this case were the exact purpose that they were that they were supposed to serve they showed the contours of the law it gave as Ruan asked for objective criteria of what's legitimate and met a legitimate medical purposes in the usual course of practice and from that those contours a jury could take those guidelines and those regulations compare them to the defendant and gma's practices and come to the obvious conclusion that what gma was doing was completely out of bounds but nowhere in the instructions and in fact the instructions explicitly stated and i'll read them from your honor for page id 927 that even if you believe that some prescriptions were not allowable under the applicable statutes and regulations the defendant cannot be convicted of a crime merely for breaching these statutes and regulations so given this court's case law that juries are presumed to follow these instructions we just don't have that per se violation issue here your honor if there are no further questions on the sufficiency issue i will turn to the rebuttal issue as mentioned at the outset neither rule 16 during the time of trial or rule 16 now require the government to disclose this expert and so under that standard it's hard to find that the district court abuses discretion by following the strictures of rule 16 but uh more importantly under rate okay okay you know just tell me how you respond to this which is called a fairness point um you know the doctor when you know the doctor's going to take the stand that's not always the case but once you know the doctor's going to take the stand if the government chooses not to put this kind of expert on i realize there's a pharmaceutical expert but not a doctor expert on doctor practices isn't it roughly a given that the government is going to have this unfair advantage all the time of putting on its expert just on rebuttal and saying yeah all we're doing they opened the door because the doctor talked about you know medical practices i mean what else is the doctor going to say of course they're going to talk about medical practices it seems like a very funny and you know maybe unfair way to run a case i'm not saying i'm not making the point there was scheming here that's not what i'm saying i'm just making the point that when it's all done it's hard to understand how it stops it seems like you could always put the expert on his rebuttal and say they opened the door because the doctor testified the defendant doctor that is how do how do i we avoid that becoming the rule circumstances of this case that's not exactly what happened here because the defendant did have an expert witness that they were willing to call and had they called that expert witness although under the rule 16 at the time of the trial it wouldn't have been an issue for the government to just to then put on its own rebuttal expert but certainly now if that expert as he was disclosed to the government if we were then to put on a rebuttal expert to rebut that expert testimony we would have to give notice under rule 16 so the rules now sort of uh contemplate that issue this was sort of a different sort of fact than what would normally happen but also in this particular instance not only was there no unfair surprise because of that issue but the government did notify the the defense ahead of time without being required to that they were going to put on a rebuttal expert now i understand that you know two days in a trial that's not ample amount of time but there certainly was a weekend in between and the defendant could have asked for a continuance which he did not so that's another reason why under this particular back pattern there's no unfair surprise but ultimately um the limited testimony of dr king goes to this issue as well the fact that dr king only testified to nine limited categories that the court held into and only allowed even limited testimony on those particular categories cabins um the unfair surprise in this particular issue as this court held in logan the testimony that dr king opined on was a defendant's testimony and so it wasn't testimony that was unfamiliar to the defense or that they couldn't anticipate would be rebutted and in that way we don't have an unfairness issue in this particular instance but your honor even if there were an unfairness issue the overwhelming evidence of this case including the 19 witnesses that offered evidence of the defendant's knowing involvement in this pill mill conspiracy shows that any potential rebuttal expert error was harmless there were multiple experts who testified including lee and size more to the red flags of unauthorized prescriptions and the jury could compare their standards and the standards we introduced to the tennessee pain management guidelines to the actions that that the defendant and dr master owned in the gma and come to the conclusion that these prescriptions went off were unauthorized and if your honor has no further questions on the rebuttal issue we would just briefly touch on the deliberate ignorance issue under ruan and this court's cases in anderson hopstetter and bauer the deliberate ignorance instruction here fully comported with the law and did not leave the jury to have any issues with determining that this was a knowing violation of of 841 and 846 um as this court has held routinely especially in mitchell which we cited in our brief deliberate ignorance is not a standard less than knowledge it's just another way that knowledge can be proven and unlike the cases in anderson yeah sorry unlike the cases in anderson hopstetter and bauer where the deliberate ignorance instruction was the only way to show that there was a knowledge requirement given here because it was a conspiracy charge as hopstetter to point it out the defendant already had the jury was already instructed that there had to be a knowing um violation that the defendant had to know that the prescriptions were issued out of bounds and so we're not operating in the world where the deliberate ignorance instruction was the only way to show that knowledge was a requirement that the government had to show uh but once again uh your honors even if there was some error here the overwhelming evidence shows that there was neither plain error or prejudicial error in authorizing this uh instruction as there was a wealth of of actual knowledge proven by the by the government and uh unless your honors want me to address the supplemental instruction or drug quantity issue the government has regressed and asked that you refer to the district court's judgment okay thank you miss lloyd mr chapman you have your rebuttal yes thank you first i'll address deliberate ignorance judge cole in the hofstetter case concurring said anderson conflicts with scott with the supreme court's opinion in ruan it did not resolve whether deliberate ignorance is welcome in controlled substance prosecutions and and here's why it's not welcome when we accuse a defendant of being deliberately ignorant to red flags we are convicting them for failing to appreciate red flags upon later review not actual unlawful prescribing and that would that's what would be required in a case such as this deliberate ignorance instructions should not be used in this context post-ruan because it waters down the intent component instead if it is used do you have any do you have any appellate decisions doing applying ruan to a conspiracy i believe uh the second ruan opinion um the 11th circuit addressed the conspiracy charge and uh and determined that it should still stand um but that that's all i have currently i'd like to address um the the rosen factors here and and these were the factors that are used by most courts to determine whether or not expert testimony would be required and those factors have been widely disseminated by the dea as what they look for in those factors these items must be to the physician for instance the government in this case moments ago said that patients admitting to diversion might be something where expert testimony isn't required under the rosen factors the patient must admit that to the physician and the physician still prescribes no logical relationship between the drugs and the treatment under the rosen factor there can't be any logical relationship um no physical examinations under the rosen factors if there was no examination they wouldn't consider that medical treatment but here we know that there were examinations in fact macaroon masseron spent over an hour with some of his patients when evaluating them and then moving on to the expert issue the notice of dr king my understanding of this case is the government lost their expert just prior to trial noticed a second expert mid trial that was not permitted and then this expert was able to testify in rebuttal the one specific item the government is missing here is any indication of what dr stanton himself on the witness stand opened the door to where now expert testimony is required dr stanton was not an expert he was a fact witness the defendant did not call his expert the government must identify some purpose for which rebuttal testimony is permitted failing to do that and a decision authorizing the government's well what well i mean the doctor testifies that these are the medical standards i follow you're not allowed to put on an expert i mean in other words this started with the idea that you put on the expert testimony your side doesn't put it on but then you have a doctor in front of lay jurors saying here are the rules of practice i mean i whether we call it a door opening or not i i guess i will say i kind of see a fairness point on the other side yeah you know everyone thought this was going to work through a battle of experts it turns out that's not what's happening but then you have the defendant testify which isn't always a norm in a criminal case but then is testifying about what the standards are i'm out of time if i may just have a few moments to answer that question thank you yes this is why this court should hold the government to its burden to require expert testimony to prove lack of a legitimate medical prescription because otherwise if the if the government escapes its burden and can rely simply on some new formulation of the rosin factors they will always sandbag an expert for rebuttal in the event that the defendant puts on their expert which would allow the government i think i think there's a lot to be said about that in a typical one of these prosecutions but this is a conspiracy one that's what's weird about this understood but this would this would allow the government an undefended expert witness to get on the stand where the defendant couldn't then in his case in chief respond to that and make those arguments that's why the government should be held to its burden to put on expert testimony to go forward with it so that the defendant can rebut it doing it the other way around is simply a burden shift and would cause the government's tactics in these cases to change which would impair the ability of the defense to respond to the government's burden thank you okay thank you very much mr chapman thank you miss loy for your helpful briefs and arguments and for answering our questions which we always appreciate the case will be submitted and the clerk may adjourn court thank you